IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| FIRSTBANK, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:24-cv-522-ECM |
| | ) | [WO] |
| WELLS FARGO BANK, N.A., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Defendant Wells Fargo Bank, N.A. objects to the Magistrate Judge's rulings on a pair of discovery motions: Plaintiffs' motion to compel, (doc. 73), and Wells Fargo's motion for a protective order, (doc. 80). (Doc. 86). Plaintiffs oppose Wells Fargo's objections. (Doc. 87). Upon consideration, Wells Fargo's objections are due to be overruled.

**I.  BACKGROUND**

This case concerns allegations that Wells Fargo refused to reimburse Plaintiffs for a check that was stolen and fraudulently deposited in a Wells Fargo account by a bad actor. (*See* doc. 21 at 3–4, 7, paras. 10, 18). The Court previously denied Wells Fargo's motion to dismiss the amended complaint, explaining that the arguments asserted in that motion were inappropriate for resolution at that stage and that the amended complaint stated plausible claims for relief. (*See* doc. 56). In so doing, the Court permitted this matter to

proceed to discovery, which the Court ordered the parties to complete by June 15, 2026. (Doc. 60).[1]

On May 20, 2026, Plaintiffs moved to compel responses to some of their discovery requests. (Doc. 73 at 2, para. 3).  Specifically, Plaintiffs sought to compel responses to five interrogatories (designated numbers 1, 3, 4, 5, and 6) and five requests for production (numbers 2, 4, 5, 6, and 7).

| Interrogatories | Requests for Production |
|---|---|
| 1. Identify the criteria, policies, and procedures by which Wells Fargo determines Wells Fargo's liability for UCC warranty claims for checks, including any documents, such as instruction manuals, setting forth any portion of those criteria, policies, and procedures. | 2. Identify the criteria, policies, and procedures by which Wells Fargo determines that checks are allegedly "counterfeit" or contain an unauthorized drawer signature, including any documents, such as instruction manuals, setting forth any portion of those criteria, policies, and procedures. |
| 3. Identify all Fraud Prevention Technology that Wells Fargo has relied on since January 1, 2021, specifying the name, version, vendor, and functionality of such technology. | 4. Identify the criteria, policies, and procedures by which Wells Fargo or its Fraud Prevention Technology red-flags, restricts, or places holds on customer accounts due to suspicious or fraudulent activity, including any documents, such as instruction manuals, setting forth any portion of those criteria, policies, and procedures. |
| 4. Identify the criteria, policies, and procedures by which Wells Fargo or its Fraud Prevention Technology red-flags, restricts, or places holds on customer accounts due to suspicious or fraudulent activity, including any documents, such as instruction manuals, setting forth any portion of those criteria, policies, and procedures. | 5. Identify the criteria, policies, and procedures by which Wells Fargo or its Fraud Prevention Technology lifts or releases any red-flags, holds, or restrictions on customer accounts due to suspicious or fraudulent activity. |
| 5. Identify the criteria, policies, and procedures by which Wells Fargo or its Fraud Prevention Technology lifts or releases any red-flags, holds, or restrictions on customer accounts due to suspicious or fraudulent activity. | 6. Identify the criteria, policies, and procedures related to the circumstances under which Wells Fargo or its staff or agents conduct sight review or assess comparators for a check deposited into accounts held at Wells Fargo, including any documents, such as instruction manuals, setting forth any portion of those criteria, policies, and procedures. |
| 6. Identify the criteria, policies, and procedures related to the circumstances under which Wells Fargo or its staff or agents conduct sight review or assess comparators for a check deposited into accounts held at Wells Fargo, including any documents, such as instruction manuals, setting forth any portion of those criteria, policies, and procedures. | 7. Produce documents sufficient to set forth all of the criteria, policies, and procedures that Wells Fargo has used, since 2021, to determine whether Wells Fargo or its staff or agents conduct sight review or assess comparators for a check deposited into accounts held at Wells Fargo. |

---

[1] On joint motion of the parties, (doc. 78), the Court extended this deadline to July 15, 2026, considering the discovery disputes detailed below, (doc. 83).

(Doc. 73 at 5–6; doc. 73-1 at 2–6; doc. 73-2 at 3–6). Wells Fargo filed its opposition to Plaintiffs' motion to compel, (doc. 77), and moved for a protective order in advance of its Rule 30(b)(6) deposition "to preclude, narrow, or defer topics that are objectionable or intertwined with [the] pending discovery disputes," (doc. 80 at 1).

The Magistrate Judge—to whom the discovery motions were referred—granted Plaintiffs' motion to compel and denied Wells Fargo's motion for a protective order. (Doc. 82).[2]  In a thorough, well-reasoned order, the Magistrate Judge concluded that the discovery Plaintiffs sought was "directly relevant" to their claims.

> For example, under Count II, Plaintiffs allege Defendant Wells Fargo "failed to act as a reasonable bank in maintaining and implementing policies governing know-your-customer, anti-money laundering, fraud prevention, check acceptance, check and account review, check fraud claims handling, and other check fraud matters." (Doc. 21 at 30, para. 116). Additionally, in Count VI, Plaintiffs allege Defendant Wells Fargo "intentionally and consciously maintained grossly inadequate policies and/or intentionally and consciously ignored its existing policies, which would have alerted it to the fraud occurring," and that "its egregious failure to maintain sufficient check fraud policies rendered it willfully ignorant to the fraud[.]" (*Id.* at 39, paras. 166–67). Thus, on the face of the complaint, Defendant Wells Fargo's policies, procedures, and fraud prevention technology are directly relevant to Plaintiffs' claims.

(Doc. 82 at 5–6 (internal citations modified)).  The Magistrate Judge specifically rejected Wells Fargo's argument that "its policies are irrelevant because a bank's internal policies do not create a duty," reasoning that the existence of a duty was "beyond the scope" of the

---

[2] Plaintiffs' motion to compel also included a request for sanctions. (*See* doc. 73 at 10–11).  The Magistrate Judge denied that request. (Doc. 82 at 9).  Neither party has objected to that ruling.

3

discovery dispute. (*Id.* at 6).  And because Wells Fargo's motion for a protective order was predicated on the same bases it had offered in opposition to Plaintiffs' motion to compel, the Magistrate Judge denied that motion, too. (*Id.* at 8–9).

Wells Fargo objects to the Magistrate Judge's ruling, asking the Court "to substantially limit the scope of the compelled production to what is legitimately at issue in this case." (Doc. 86 at 1).

## II.  LEGAL STANDARDS

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1).  The "district court has broad discretion in shaping the scope of discovery." *Williams v. City of Dothan*, 745 F.2d 1406, 1415 (11th Cir. 1984).  "The Supreme Court has stressed on multiple occasions the need to construe the Rules liberally to allow for robust discovery." *Akridge v. Alfa Mut. Ins. Co.*, 1 F.4th 1271, 1276–77 (11th Cir. 2021) (citing *Hickman v. Taylor*, 329 U.S. 495, 506 (1947) and *Schlagenhauf v. Holder*, 379 U.S. 104, 114 (1964)).  One of the few circumstances that can justify hemming in this "robust discovery" is "when the inquiry touches upon the irrelevant." *Id.* at 1277 (quoting *Hickman*, 329 U.S. at 508).  "Where there is a doubt over relevancy, the court should still permit discovery." *Coker v. Duke & Co.*, 177 F.R.D. 682, 685 (M.D. Ala. 1998) (citing *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984)).[3]

---

[3] Here and elsewhere the Court cites nonbinding authority.  While these cases are not precedential, the Court finds them persuasive.

4

If a party objects to a magistrate judge's order on a non-dispositive pretrial matter, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." FED. R. CIV. P. 72(a).  This is a high bar. *See Holton v. City of Thomasville Sch. Dist.*, 425 F.3d 1325, 1350 (11th Cir. 2005) ("Clear error is a highly deferential standard of review."); *Dees v. Hyundai Motor Mfg. Ala., LLC*, 524 F. Supp. 2d 1348, 1350 (M.D. Ala. 2007) ("[I]n the absence of a legal error, a district court may reverse only if there was an 'abuse of discretion' by the magistrate judge." (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401 (1990))).

## III.  DISCUSSION

Wells Fargo argues that, because it owes Plaintiffs no duty, its internal policies are irrelevant. (*See, e.g.*, doc. 86 at 1 ("The central deficiency in the [Magistrate Judge's o]rder is this: the Magistrate Judge found Wells Fargo's internal policies, procedures, and fraud-prevention technology directly relevant to Plaintiffs' claims, while expressly declining to address the threshold legal question that determines whether such discovery bears on any viable claim, namely, whether Wells Fargo owes any duty to Plaintiffs at all."); *id.* at 6 ("Because no duty runs from Wells Fargo to Plaintiffs, Wells Fargo's internal policies cannot establish or breach a duty that does not exist."); *id.* at 9 ("In short, every claim against Wells Fargo either depends on a duty that is absent because Plaintiffs are not customers, or it is governed by legal standards that do not turn on Wells Fargo's internal policies . . . .")).  The Court disagrees.

As the Magistrate Judge correctly determined, Plaintiffs' discovery requests are directly relevant to Plaintiffs' claims.  Broadly speaking, Plaintiffs want to know more

about Wells Fargo's fraud prevention technology and its policies and procedures as they relate to fraud prevention. (*See* doc. 82 at 3–4). That's because Plaintiffs are alleging that Wells Fargo's fraud prevention technology and policies—whatever they are—are insufficient. (*See, e.g.*, doc. 21 at 38, para. 164 ("Wells Fargo intentionally maintained check fraud policies that are either egregiously insufficient to comply with industry norms . . . or that are knowingly convoluted, contradictory, ambiguous, and vague, such that Wells Fargo can purportedly deny liability for check fraud on nearly any grounds."); *see also* doc. 27 at 7 (Wells Fargo's affirmative defense that it "acted in good faith and without any knowledge of any wrongdoing or improper activity")). So Wells Fargo's fraud prevention technology and policies are relevant to Plaintiffs' claims. *See Akridge*, 1 F.4th at 1276 ("Relevance in the context of discovery 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978))).

Wells Fargo's argument disregards the liberal discovery policy of the Federal Rules of Civil Procedure, which make clear the intended breadth of discovery into civil matters in the federal courts. *See* FED. R. CIV. P. 26(b)(1). Moreover, if Wells Fargo's position were adopted, a defendant could effectively block discovery into any claim it argued did not have merit. That cannot be the standard. *See Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013) ("Rule 26(b)(1) indicates that the Federal Rules of Civil Procedure strongly favor full discovery whenever possible, as this rule generally entitles a

civil litigant to discovery of any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence." (quotations omitted)).

It's not that defendants can never bar discovery into meritless claims—they can, but they must do so through a dispositive motion. Success on a dispositive motion curtails discovery into any disposed-of claims. *See Sanders*, 437 U.S. at 352 ("[I]t is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken[] . . . .").[4] But while Plaintiffs' claims remain in this action, the Court disagrees with Wells Fargo that discovery into them is irrelevant because they may ultimately fail as a matter of law. *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 581 (N.D. Tex. 2018) ("[A] party cannot refuse to engage in—and is not excused from being subjected to—discovery simply because the discovery is relevant to a claim on which the resisting party believes that he will or should prevail."); *Alcoa, Inc. v. Universal Alloy Corp.*, 2016 WL 11499567, at *4 (N.D. Ga. 2016) ("While [the defendant] denies and vigorously disputes the merits of [the plaintiff]'s claims, the allegations of the amended complaint clearly encompass all of the component parts of the stretch-form process, at least for the parts at issue in this case, so [the defendant]'s objections based on relevance . . . are unpersuasive and its arguments challenging the merits of [the plaintiff]'s claims must be reserved for a motion for summary judgment." (footnote omitted)).

---

[4] Wells Fargo advanced many of the arguments it makes now in its motion to dismiss, (doc. 28), which the Court denied, (doc. 56). While the Court has also denied Wells Fargo's partial motion for summary judgment, that motion was only denied because it contemplated filing a separate motion for summary judgment "at a future date." (Doc. 65 at 1 & n.1). Wells Fargo is, of course, free to "refile a single motion for summary judgment at an appropriate time," (doc. 69 at 1), in which it can argue that Plaintiffs' claims fail as a matter of law. Alternatively, it can move for judgment on the pleadings. *See* FED. R. CIV. P. 12(c).

Wells Fargo also argues that the requested discovery is disproportionate. (Doc. 86 at 10–11). The burden to Wells Fargo is "substantial," it argues, "because these materials are highly confidential and competitively sensitive." (*Id.* at 11). Wells Fargo made a similar argument to the Magistrate Judge, (doc. 77 at 8–9), and the undersigned rejects it for the same reason the Magistrate Judge did: There is a stipulated protective order in place under which Wells Fargo can "designate material produced as Confidential," including depositions, (*see* doc. 55 at 1, 5–6), and Wells Fargo has offered no reason why that protective order "is insufficient to address the perceived harm," (doc. 82 at 7). *See also Henderson v. Holiday CVS, L.L.C.*, 269 F.R.D. 682, 686 (S.D. Fla. 2010) ("[T]o even merit consideration, 'an objection must show specifically how a discovery request is overly broad, burdensome[,] or oppressive, by submitting evidence or offering evidence which reveals the nature of the burden.'" (quoting *Coker*, 177 F.R.D. at 686)). Moreover, beyond cursory citations to Rule 26, Wells Fargo cites no authority in support of its proportionality argument. (*See* doc. 86 at 10–11); *Nat'l Labor Relations Bd. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived.").

In sum, Wells Fargo has failed to identify any error in the Magistrate Judge's order, much less clear error. Its objections are therefore due to be overruled.

## IV. CONCLUSION

Upon consideration, it is

ORDERED that Wells Fargo's objections to the Magistrate Judge's order (doc. 86) are OVERRULED.

DONE this 13th day of July, 2026.

                       /s/ Emily C. Marks
                       EMILY C. MARKS
                       UNITED STATES DISTRICT JUDGE